**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MORGAN MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **BANK OF AMERICA**, | ) | **Class Action** |
| | ) | |
| **Defendant.** | ) | **Jury Demanded** |

**COMPLAINT
AND REQUEST FOR INJUNCTIVE RELIEF**

**I. Introduction**

1.      The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. §§501-596 was enacted to protect those men and women who serve in the United States military from the financial consequences attendant to departure from their jobs and homes to be on active duty. Serving on active duty places men and women called up for active military duty in harm's way and prevents them from being in a position to maintain their financial affairs for the duration of their active service.

2.      SCRA's purposes are to "provide for, strengthen, and expedite the national defense through protection ... of servicemembers ... to enable such persons to devote their entire energy to the defense needs of the Nation..." (50 U.S.C. App. §502(1)) and to "provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of service members during their military service." 50 U.S.C. App. §502(2).

3.      Section 518 of the Act provides that:

Application by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension pursuant to this Act [sections 501 to 515 and 516 to 597b of this Appendix] in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability of that servicemember shall not itself (without regard to other considerations) provide the basis for any of the following:

(1) A determination by a lender or other person that the servicemember is unable to pay the civil obligation or liability in accordance with its terms.
(2) With respect to a credit transaction between a creditor and the servicemember—
(A) a denial or revocation of credit by the creditor;
(B) a change by the creditor in the terms of an existing credit arrangement; or
(C) a refusal by the creditor to grant credit to the servicemember in substantially the amount or on substantially the terms requested.
(3) An adverse report relating to the creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information. ...

4.      The SCRA empowers courts to stay the sale, foreclosure or seizure of a servicemember's home or other property and renders any sale, foreclosure or seizure that takes place during the grace period after the servicemember's completion of military service invalid unless it is pursuant to a court order granted before such sale, foreclosure or seizure.

5.      The SCRA provides remedies for violation of the Act among which is the possibility of compensatory and punitive damages. 50 U.S.C. App. §597b.

6.      The Bank of America ("BOA"), defendant herein, has failed and willfully refused to comply with the SCRA, depriving the men and women who have served in the United States military of clearly established rights. BOA has made adverse reports relating to the creditworthiness of servicemembers protected by the Act, proceeded with foreclosures in

violation of the Act and engaged in other activities contrary to the clear mandate of the Act.

7.      Morgan Murphy ("Mr. Murphy") brings this class action on behalf of himself and other similarly situated servicemembers who have been injured and damaged by BOA's failure to comply with the SCRA.

## II. The Parties

8.      Mr. Murphy is a resident of Birmingham, Alabama, who was at all relevant times a member of the United States Navy. He served as a Lieutenant Commander and was issued active military orders in July 2010 to report for active duty in Afghanistan and the orders commenced on September 17, 2010. Consequently, Mr. Murphy was called up for military service as provided by 50 U.S.C. §511(2)(A)(ii). While in Afghanistan, Mr. Murphy served as Director of Media Outreach for the International Security Assistance Source and, in his position, briefed General David Petraeus, 40 general officers and two ambassadors on a daily basis. He was awarded the NATO Freedom Medal, Afghanistan Campaign Medal and Defense Meritorious Service Medal for his service.

9.      Bank of America Corporation ("BOA") is headquartered in Charlotte, North Carolina and has operations in fifty (50) states and forty (40) countries. BOA stock is sold on the American Stock Exchange and the bank provides banking services, including consumer real estate services. BOA processes home loan through 5,700 banking centers, banking officers in 500 locations and by other means. BOA conducts business in the State of Alabama and has branches located in the State. Its registered agent for the purpose of service in the State of Alabama is CT Corporation System, Montgomery, Alabama.

## III. Jurisdiction and Venue

10.     Mr. Murphy is a servicemember as defined by the SCRA and was on active military duty during the relevant period of time. He is a resident of Birmingham, Jefferson County, Alabama and BOA holds a mortgage on Mr. Murphy's residence in Birmingham, Alabama.

11.     BOA has offices located in Birmingham, Alabama, and makes home loans in Alabama.  Compass Bank made the mortgage loan on Mr. Murphy's primary residence and said loan is now held by BOA who has systematically violated the rights of servicemembers provided by the SCRA by adversely reporting to credit agencies the creditworthiness of servicemembers based on their exercise of their rights under the Act. BOA also has foreclosed loans secured by mortgages on the homes of servicemembers in violation of the SCRA.

12.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331.

13.     Venue in the Northern District of Alabama, Southern Division is proper under 28 U.S.C. §1391. BOA routinely conducts business in the State of Alabama and the real estate that is affected by the BOA mortgage is located in Birmingham, Alabama. Further the majority of acts and omissions giving rise to Mr. Murphy's claims occurred in Birmingham, Alabama.

## IV. Facts

14.     Mr. Murphy is a decorated Naval officer who has served his country in the military on four continents since joining the Navy in 1999. In his civilian life, Mr. Murphy is a Southern humorist, journalist, book author and chief executive officer of Motorpool.com. His book, *Off the Eaten Path,* was published by Time, Inc., in 2011 and was a bestseller. Prior to founding Motorpool.com, Mr. Murphy was employed as travel editor, food critic and national spokesman for Southern Living magazine.

15. BOA holds a first mortgage on Mr. Morgan's residence in Birmingham, Alabama.

16. Mr. Murphy was called up for active duty in Afghanistan in July 2010 and his active service commenced on September 17, 2010. Prior to leaving for Afghanistan, Mr. Murphy contacted BOA by telephone to submit his military orders to BOA. He spoke to Youlanda Agulara to discuss his orders and to learn what protection he would receive pursuant to the SCRA.

17. Ms. Agulara told Mr. Murphy that he would not have to make a payment on his BOA home mortgage until January 1, 2012 and that there would be no negative credit reporting until after December 1, 2011. Ms. Agulara informed Mr. Murphy that he could ask BOA for a loan modification upon his return from service. Mr. Murphy also was told that he was protected under the SCRA until September 2012. Mr. Murphy requested written confirmation of the information he received from Ms. Agulara.

18. Mr. Murphy received a letter from BOA dated September 10, 2010, confirming most of what he had been told by Ms. Agulara. According to the letter:

> On July 29, 2008, President Bush signed into effect the Housing and Economic Recovery Act of 2008. As part of this Act, SCRA benefits were enhanced and extended for certain individuals
>
> .
>
> For individuals whose duty ends between July 30, 2008 and December 31, 2010, twelve additional payments will be covered under the Servicemembers Civil Relief Act. This means that for an additional twelve payments, those who qualify will receive a reduced interest rate of 6%, as well as protection from late charges. Credit reporting will also be blocked for those twelve payments.
>
> This letter is being sent to you as it appears you may qualify for the additional protection provided under the Housing and Economic Recovery Act of 2008.

> Please note that if you do in fact qualify, there is nothing further required from you, and we have already begun processing your loan under the new guidelines.

The letter was sent in the name of the SCRA Department, Bank of America Home Loans.

19.     Mr. Murphy's last day of active duty was June 6, 2011.

20.     On October 27, 2011, BOA sent Mr. Murphy a letter informing him that he had been assigned a customer relationship manager to discuss with him programs that would help him avoid foreclosure.

21.     On November 4, 2011, Mr. Murphy telephoned BOA and spoke to someone who told him that his loan was not current and that BOA had issued negative credit reports to the credit reporting agencies. However, on November 7, 2011, BOA wrote Mr. Murphy that he should disregard the bank's letter dated October 27, 2011, and that his loan was not in a credit relationship manager status.

22.     On November 11, 2011, Mr. Murphy checked his credit report and learned that his credit score had dropped from a high of 800 as of June, 2005 to 663 as of March 26, 2012. Mr. Murphy called BOA on November 11, 2011, and spoke to Rhonda McGee who told him that SCRA does not prevent foreclosure or an interest rate in excess of 6% plus late charges but that BOA could not foreclose on him until September 1, 2012. Ms. McGee also stated that BOA began reporting adversely on Mr. Murphy's credit after August 2011 because BOA's internal policies on adverse reporting had changed. She suggested that Mr. Murphy seek a loan modification and took information from him which she said would get the modification process started. Ms. McGee told Mr. Murphy he would hear from BOA in 5 to 10 days about the modification.

23.     Mr. Murphy, having not heard back from BOA, sent a certified letter on November 28, 2011, requesting written confirmation of his options for modifying his loan and having his credit report corrected. On December 28, 2011, Mr. Murphy followed up his letter with a telephone call to the BOA Military Assistance Unit. He spoke with Selena Brown who reviewed his file and told Mr. Murphy that no workout options were available to him. She said that, despite the representations in BOA's November 7, 2011 letter that his loan was not in a credit relationship manager status, it really was in such status but had not been assigned to an actual credit relationship manager.

24.     On December 29, 2011, Mr. Murphy wrote BOA requesting that it provide him with a written clarification of the status of his loan.

25.     In January 2012, Mr. Murphy received a telephone call from Cale Readis in the BOA Military Assistance Unit. He told Mr. Murphy that BOA would correct his credit report. Mr. Readis apologized for the inconvenience. He suggested that Mr. Murphy "stay on top of the mortgage modification department" and asked him to email copies of his credit reports to Mr. Readis.

26.     On January 18, 2012, Mr. Murphy was informed that his credit score had dropped from 786 in May 2011 to 661.

27.     On February 16, 2012, someone named Denise at BOA called Mr. Murphy and told him that the bank was entitled to report negatively on his credit and that he needed to show her where the bank had said otherwise. Mr. Murphy told Denise about his conversation with Cale Readis and she told him that she saw no record of the conversation.

28.     On July 5, 2012, Mr. Murphy received a telephone call from some one named

Stacy at BOA who asked him to confirm his mailing address. Mr. Murphy's mailing address is that of the real property securing BOA's loan. Stacy told him what address BOA had been using and it was incorrect. Stacy asked Mr. Murphy if he had received notice from BOA that it had scheduled foreclosure of the mortgage on his home for August 2, 2012. Mr. Murphy had not received any such notice of a planned August foreclosure. Holding a foreclosure sale on August 2, 2012 would contradict representations made by BOA to him in July 2010 that he was protected under the SCRA until September 2012.

29.     As of July 5, 2012, Mr. Murphy was 7 months behind on his mortgage payments to BOA. Mr. Murphy was on active duty for approximately nine (9) months.

## V. Class Action Allegations

30.     The Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), b(2) and b(3) on behalf of the following class:

> All service members with loans originated prior to the period of the servicemembers active military service who, within the statute of limitations as extended or tolled by any period of military service:
>
> > (1) were on active duty in the military as defined by 50 U.S.C. App. §511(2), or had the protection of SCRA under §516 or were within the grace period under §533; and
> > (2) whose credit was adversely reported during the period in which the servicemember was protected by the SCRA; or
> > (3) who has had foreclosure threatened or completed in violation of the SCRA; or
> > (4) whose interest rates were not properly maintained at 6% or less effective on the dates of the servicemember's first day of active duty (the "Class").
>
> The Class does not include any servicemembers

who executed a valid written waiver of the rights
and protections provided under the SCRA.

31. Specifically excluded from the Class of persons on behalf of whom this action is brought are BOA, its subsidiaries and affiliates, its officers, directors and employees, members of the immediate families of officers and directors and their legal representatives, heirs, successors, or assigns, any entity in which any of the foregoing has a controlling interest and any judges, court personnel or jurors involved in this case.

32. This class action satisfies all of the requirements under Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), including, without limitation, numerosity, commonality, typicality, adequacy and predominance.

33. The members of the Class are so numerous and dispersed that the joinder of all members is impracticable.

34. Members of the Class may be identified by a review of the loan records maintained by BOA.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among questions of law and fact common to the Class are:

a. Whether BOF properly adjusted Class members interest rates so as not to exceed 6% effective on the dates of their first day of active duty as required by §507 (b)(2) of the SCRA.

b. Whether BOA unlawfully communicated erroneous information to Class members regarding the status of their loans and the protections to which they were

entitled under the SCRA.

c. Whether BOA, in its accounting and reporting of the reduction of Class members' interest rates to 6%, employed methods which are unlawful under the SCRA.

d. Whether BOA's collection methods employed against Class members constitute a violation of §518(3) of the SCRA.

e. Whether BOA unlawfully attached detrimental information to the credit reports of SCRA-eligible servicemembers or otherwise adversely reported information about servicemembers' credit to credit reporting agencies.

f. Whether BOA violated the Fair Credit Reporting Act.

g. Whether BOA engaged in foreclosure activity in violation of §533 of the SCRA or threatened foreclosure in violation of the Act.

h. Whether the Class members have sustained damages and, if so, what the appropriate measure of those damages should be.

36. The Plaintiff's claims are typical of the claims of the members of the Class in that he and members of the Class sustained damages arising out of BOA's repeated violations of the SCRA.

37. The Plaintiff will fairly and adequately protect the interests of the members of the Class as the Plaintiff's claims are not antagonistic to the claims of the Class and there are no conflicts between the Plaintiff's claims and the claims of Class members.

38. The Plaintiff has retained attorneys competent and experienced in class action litigation who have collectively obtained judgments or settlements in class action litigation and

have extensive trial and appellate experience in federal court.

39. The Class consists of eligible servicemembers who are or have been on active duty in any branch of the Armed Forces of the United States as well as the commissioned Corps of the National Oceanographic and Atmospheric Administration and the commissioned corps of the Public Health Service. As a result, class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable, adjudication of the controversy through a class-action will avoid the possibility of inconsistent and conflicting adjudications of the claims asserted herein and there will be no difficulty in the management of this action as a class-action.

## COUNT ONE
### (Violation of 50 U.S.C. App. §527(B)(2))

40. The Plaintiff realleges each and every allegation set forth above as if repeated verbatim herein.

41. Mr. Murphy promptly notified BOA of his orders for active duty and sent BOA a copy of his orders showing the effective date.

42. Despite receiving prompt notification of Mr. Murphy's call to active duty, BOA failed to apply the statutorily-mandated interest rate to his loan. Upon information and belief, BOA has invoked the same unlawful procedures and practices for all members of the Class BOA's violation of the SCRA has caused the Plaintiff and the Class actual damages, including consequential damages.

43. BOA is therefore liable to the plaintiff and the Class for damages including actual and punitive damages, prejudgment interest, costs and attorneys fees.

## COUNT TWO
### (Violation of 50 U.S.C. App. §527)

44.     The Plaintiff realleges each and every allegation set forth above as if repeated

verbatim herein.

45.     Between July 2010 and the present date, BOA has required Mr. Murphy to contact

it numerous times in an effort to preserve rights provided to him as a servicemember protected by

the SCRA.

46.     Section 527(b)(2) of the SCRA requires creditors to apply a 6% interest rate

limitation to an eligible servicemember's debt "effective as of the date on which the

servicemember is called to military service." This action is to be taken "upon receipt of written

notice and a copy of orders calling a servicemember to military service."

47.     Section 527(a)(1) requires the creditor to maintain the 6% interest rate limitation

"during the period of military service." BOA's violation of the statutory mandate has caused the

Plaintiff and the Class members actual damages, including consequential damages.

48.     BOA is therefore liable to the Plaintiff and the Class for damages including actual

and punitive damages, prejudgment interest, costs and attorneys fees.

## COUNT THREE
### (Violation of 50 U.S.C. App. §518)

49.     Plaintiff realleges each and every allegation set forth above as if repeated verbatim

herein.

50.     Section 518 of the SCRA provides that:

> Application by a servicemember for, or receipt by a servicemember
> of, a stay, postponement, or suspension pursuant to this Act
> [sections 501 to 515 and 516 to 597b of this Appendix] in the

payment of a tax, fine, penalty, insurance premium, or other civil
obligation or liability of that servicemember shall not itself
(without regard to other considerations) provide the basis for any
of the following:

      ...

    (3) An adverse report relating to the
creditworthiness of the servicemember by or to a
person engaged in the practice of assembling or
evaluating consumer credit information. ...

51.     BOA has reported adversely on the creditworthiness of Mr. Murphy during the
period of time that he was protected by the SCRA.

52.     Mr. Murphy's credit score went to 661 as of January 2012 from a high of in
excess of 800 prior to his being called to active military service and prior to BOA's adverse
reports of his creditworthiness.

53.     BOA engaged in credit reporting activities that are contrary and in violation of the
SCRA.

54.     As a consequence of BOA's violations of the SCRA, Mr. Murphy has suffered the
effects of having a much worse credit score than he would had BOA abided by the Act.

55.     BOA is therefore liable to the Plaintiff and the Class for damages including actual
and punitive damages, prejudgment interest, costs and attorneys fees.

### COUNT FOUR
**(Violation of 15 U.S.C. §1681 *et seq.*)**

56.     The Plaintiff realleges each and every allegation set forth above as if repeated
verbatim herein.

57.     Under 15 U.S.C. §1681 *et seq.* ("Fair Credit Reporting Act"), BOA had an
obligation and duty to report accurately and in compliance with the restrictions applying to

servicemembers as a consequence of the SCRA.

58.     BOA reported adversely on Mr. Murphy's credit when it was prohibited from doing so by the SCRA. Such adverse reports were based on Mr. Murphy's failure to make payments which were not due to be made because of the SCRA but which BOA nevertheless treated as being delinquent.

59.     BOA willfully or negligently reported incorrect credit information in violation of the SCRA and the Fair Credit Reporting Act.

60.     Mr. Murphy has suffered damages from BOA's violation of the SCRA and Fair Credit Reporting Act.

61.     BOA is therefore liable to the Plaintiff and the Class for damages including actual and punitive damages, prejudgment interest, costs and attorneys fees.

**COUNT FIVE**
**(Violation of 50 U.S.C. App. §518)**

62.     The Plaintiff realleges each and every allegation set forth above as if repeated verbatim herein.

63.     BOA unlawfully adjusted the interest rate on Mr. Murphy's loan and now has proceeded to attempt to collect its loan by means prohibited by the SCRA.

64.     BOA has initiated a foreclosure sale under the power of sale in its mortgage and has failed to comply with the requirements for conducting the foreclosure of real property owned by a servicemember in compliance with the SCRA.

65.     Section 518(1) makes it unlawful for a creditor to take the position that a servicemember's use of the SCRA for protection renders the servicemember "unable to pay the

civil obligation or liability in accordance with its terms."

66.     Section 518(3) makes it unlawful for a servicemember's invocation of protection under the Act to serve as the basis for a creditor to make "an adverse report relating to creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information."

67.     The pattern of conduct engaged in by BOA in connection with its loan serving and attempts to collect on its loan to Mr. Murphy violates the collection provisions of the SCRA.

68.     BOA's willful breach of the SCRA has caused the Plaintiff and the Class to suffer actual damages, including consequential damages.

69.     BOA is liable to the Plaintiff and the Class members for damages including actual damages, prejudgment interest, costs and attorneys fees.

## **PRAYER FOR RELIEF ON COUNTS ONE THROUGH FIVE**

WHEREFORE, Morgan Murphy, for himself and on behalf of the Class, requests that this Court grant the following relief:

A.     Determining that this action is a proper class action, and certifying the Plaintiff as lead Plaintiff and as a class representative and Plaintiff's counsel as class counsel under rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory, consequential, and punitive damages in favor of the Plaintiff and all other class members against the Defendant for all damages sustained as a result of the Defendant's wrongdoing in an amount to be proven at trial;

C.      Awarding the Plaintiff and class members their costs and disbursements of this suit, including reasonable attorneys fees, accountants fees and experts fees;

D.      Awarding the Plaintiff an incentive payment for serving as class plaintiff; and

E.      Awarding such other and further and different relief as may be just and proper.

### COUNT SIX
### (Equitable Relief)

70.      **The Plaintiff also requests injunctive relief on an emergency basis given BOA's threat of imminent foreclosure.**

71.      Plaintiff realleges each and every allegation set forth above as if repeated verbatim herein.

72.      BOA has informed Mr. Murphy that it has noticed a foreclosure sale of his residence for August 2, 2012.

73.      BOA's foreclosure will violate the SCRA.

74.      If Bank of America is allowed to foreclose its mortgage on the Plaintiff's residence, the Plaintiff will suffer irreparable harm, being deprived of his home place without the protections provided to him by the SCRA.

75.      The Plaintiff has no means, other than injunctive relief, of protecting himself from the harm that will ensue as a consequence of BOA's unlawful foreclosure.

76.      The relief requested herein is not contrary to public policy or against the public's interest.

77.      The Plaintiff is likely to prevail on the merits.

**WHEREFORE, the Plaintiff requests that this Court set an emergency hearing on his request for injunctive relief and, upon such hearing, that this Court enjoin Bank of America from proceeding with foreclosure unless and until an order approving such**

**foreclosure has been entered.**

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE

*/S/ Romaine S. Scott, III*
Romaine S. Scott, III (ASB-0730-c64r)

OF COUNSEL:

Scott & Scott Law, LLC
Post Office Box 1248
Fairhope, Alabama 36533

Telephone: 251-621-8088
Facsimile: 251-621-8069
Email: rss@saslawllc.com

*/S/ Gregory A. Cade*
Gregory A. Cade

*/S/ Mark L. Rowe*
Mark L. Rowe

OF COUNSEL:

Environmental Litigation Group, P.C.
3529 7th Avenue South
Birmingham, Alabama 35222

Telephone: 205-328-9200
Facsimile: 205-328-9456
Email: gregc@elglaw.com
mrowe@elglaw.com

ATTORNEYS FOR PLAINTIFFS AND
PLAINTIFF CLASS

Plaintiff's Address: Morgan W. Murphy, 3620 Country Club Road, Birmingham, Alabama 35213.

Serve Defendant by Certified Mail: Bank of America, c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36109.