# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MORGAN MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:12-CV-2520-VEH** |
| | ) | |
| **BANK OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

**THIS CAUSE** is before the court on the Defendant's Motion to Dismiss (Doc. 11) (the "Motion") for failure to state a claim, filed on August 15, 2012. Plaintiff, with the court's permission, filed an out of time Response on September 13, 2012. The Defendant filed its reply on September 20, 2012. The Motion is now ripe for disposition.

## I.    BACKGROUND[1]

Plaintiff Morgan Murphy ("Murphy") has served as an officer in the United States Navy since 1999. Murphy lives in Birmingham, Alabama. He owns a home, which he financed through a mortgage with the Defendant Bank of America ("BOA")

---

[1] Because this cause is before the court on a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the Plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

at a 4.875% interest rate.  In July 2010, Murphy received orders to report to Afghanistan in September 2010.

In preparation for his deployment, Murphy contacted BOA and spoke with Youlanda Agulara about his mortgage.  Agulara told Murphy that he would not have to make any loan payments until January 1, 2012, that there would be no negative credit reporting until December 1, 2011, and that he could ask for a loan modification upon his return from Afghanistan.  (Doc. 1 at 5.)  Murphy requested written confirmation of their conversation.  BOA sent Murphy a letter dated September 10, 2010, which said that those who qualify would be protected from late charges and adverse credit reporting for a specified period of time.  The letter did not say when the protection period would start or when it would end.  Additionally, the letter said that "those who qualify will receive a reduced interest rate of 6%" (Doc. 1 at 5.)  The letter did not say that Murphy was entitled to the reduced interest rate.  More important, the letter did not say that Murphy would <u>not</u> have to make his mortgage payments.

Murphy returned from active duty in Afghanistan in June 2011.  In late October 2011, he learned that BOA had started the foreclosure process on his home.  Over the next several months, Murphy had several conversations with BOA representatives and received conflicting information regarding the status of his loan.

Additionally, in the spring of 2012, Murphy learned that his credit score had dropped by over one hundred points since he left for Afghanistan.  Murphy requested that BOA correct his credit report.  In January 2012, a BOA representative called Murphy and apologized for BOA's adverse credit reporting.  He told Murphy that BOA would fix the problem.  In February, a BOA representative called Murphy and told him that BOA would continue to file adverse credit reports.  When Murphy told this representative about his January conversation, the representative said she had no record of it.

Finally, in July 2012, Murphy learned that BOA would foreclose on his home on August 2, 2012.  At that point, Murphy was seven (7) months behind on his mortgage payments.

On July 23, 2012, Murphy filed this action.  His Complaint alleges that BOA has violated § 518 and § 527 of the Servicemember Civil Relief Act, 50 App. U.S.C. § 501 *et seq.*, (the "SCRA") as well as the Fair Credit Reporting Act, 15 U.S.C. § 1681, (the "FCRA").  Section 518 of the SCRA prohibits lenders from taking certain enumerated actions against service members.  Section 527 of the SCRA concerns the interest rate a lender may charge a service member while the service member is protected by the SCRA.  Murphy's FCRA claim is derivative of his claim under the SCRA.  (See Doc. 1 at 14) (stating BOA adversely reported on Murphy's credit for

3

his "failure to make payments which were not due to be made because of the SCRA but which BOA nevertheless treated as being delinquent.").  The Complaint requests compensatory and punitive damages for Murphy and all others similarly situated. The Complaint also requests an injunction prohibiting BOA from foreclosing on Murphy's home.

BOA responded to Murphy's lawsuit by filing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  BOA contends that, because Murphy is seven months behind on his mortgage, § 518 does not prohibit it from adversely reporting on his credit or from foreclosing on his home.  Similarly, BOA contends that § 527 sets a statutory maximum interest rate cap, not a mandatory rate.  Because Murphy's interest rate was, at all times, below the statutory cap, BOA contends that it has not violated § 527.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955  (2007); *see also* Fed. R.

Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of detailed factual allegations within a complaint. *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47, 78 S. Ct. 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (emphasis added). The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680; 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted)

## III.   ANALYSIS

BOA does not seriously dispute the factual allegations of Murphy's Complaint. Instead, BOA contends that, even accepting the allegations of Murphy's Complaint as true, the Complaint fails to allege a violation either § 518 or § 527 of the SCRA. The court will examine each section in turn.

### A.   Section 518

The meaning of § 518 is a straightforward question of statutory interpretation. The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 846 (1997) (internal quotation marks and citations omitted). Section 518 of the SCRA provides, in pertinent part:

> Application by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension pursuant to this Act [sections 501 to 515 and 516 to 597b of this Appendix] in the payment of a tax, fine,

6

penalty, insurance premium, or other civil obligation or liability of that
servicemember shall not itself (without regard to other considerations)
provide the basis for any of the following:

(1)     A determination by a lender or other person that the
        servicemember is unable to pay the civil obligation or liability in
        accordance with its terms.

. . .

(3)     An adverse report relating to the creditworthiness of the
        servicemember by or to a person engaged in the practice of
        assembling or evaluating consumer credit information.

. . .

50 App. U.S.C. § 518.

Upon examining the plain language of § 518, the court concludes this provision
is an anti-retaliation provision.   The operative language in § 518 is "shall
not . . . provide the basis for." 50 App. U.S.C. § 518.  This language proscribes doing
one thing because of something else.   Here, the triggering act is a service member's
application for, or receipt of, a stay, postponement, or suspension of a civil
obligation.  Once a service member applies for or receives a stay, § 518 prohibits a
creditor from doing any of six enumerated activities.  *See* 50 App. U.S.C. § 518(1) &
(3).  Two of these activities are relevant here: (1) determining that the servicemember
is unable to pay a civil obligation, and (2) submitting an adverse credit report.  *See*
*id.*  Section 518 is not a blanket prohibition on these two activities.  Instead, it only
prohibits doing these activities <u>because of</u> a service member's application for, or
receipt of, a stay under the SCRA.  So long as the creditor has a valid and alternative

7

reason for its action, the creditor does not violate § 518.  In fact, a creditor may lawfully consider a service member's application for, or receipt of, a stay under the SCRA in deciding to do any of the enumerated activities in § 518.  *See* 50 App. U.S.C. § 518 (stating that an application ". . . shall not itself (<u>without regard to other considerations</u>) provide the basis for" any of the six enumerated activities) (emphasis added).  It is only doing one of the enumerated activities <u>solely because of</u> a service member's application for, or receipt of, a stay that § 518 prohibits.

Other district court's have interpreted § 518 to mean the same thing.  For example, in *Koenig v. Waukesha State Bank*, 2006 WL 2334841, *7 (E.D. Wis. Aug. 10, 2006), the court explained:

> Section 518(3) prohibits a creditor from using the fact that a servicemember debtor applied for a stay as the basis for an adverse report of credit worthiness. Therefore, if WSB were to make an adverse report to a credit bureau regarding Koenig's credit worthiness based upon the fact that Koenig applied for a stay under the Act, WSB would violate § 518(3). However, WSB has not indicated that this is what it intends to do. Rather, Koenig objects to WSB's stated intention to report that Koenig has failed to satisfy his obligation of making equal periodic payments of the owed amount during the stay period. A plain reading of § 518 indicates that this sort of reporting would not be prohibited under the Act. Koenig provides no support for his argument that such reporting is prohibited.

> Therefore, WSB is prohibited from reporting the fact of Koenig's request for a stay itself as a basis for an adverse report regarding Koenig's credit worthiness; however, WSB may, if applicable and subject to all other laws governing the matter, adversely report that

Koenig has failed to satisfy his obligation within the stay period. Thus, in regards to this claim, summary judgment shall be granted in favor of the defendant.

*See also Rodriguez v. American Express*, 2006 WL 908613, at *7 (E.D.Cal. Apr. 7, 2006); *Martin v. Armstrong*, 1998 WL 1765716, at *2 (E.D.Tex. Sept. 21, 1998). While the *Koenig*, *Rodriguez*, and *Martin* opinions are unreported, the court finds them persuasive, especially given Murphy's failure to cite any authority to the contrary. (*See* Doc. 16.)

Turning to Murphy's Complaint, it alleges two separate violations of § 518. Count Three alleges that BOA violated § 518(3) by reporting adversely on Murphy's credit beginning in August 2011, after Murphy had returned from active duty. Count Five alleges that BOA violated § 518(1) in determining that Murphy was unable to pay his mortgage.[2]  However, the Complaint does not allege that BOA took either action <u>because</u> Murphy applied for, or received, a stay under the SCRA.[3]  In fact, the Complaint alleges that Murphy was seven months behind on his mortgage because

---

[2]  Count Five also references § 518(3).  However, this count relates primarily to the foreclosure sale and not Murphy's credit score.  Thus, this reference to § 518(3) seems superfluous.  Either way, the court's analysis would be the same.

[3]  BOA also argues that Murphy never applied for or received a stay, postponement or suspension of his mortgage under the SCRA.  Murphy counters that his phone conversation with Agulara before he left for Afghanistan qualifies as an application for relief under the SCRA.  The court need not decide this question.  Even if Murphy's conversation with Agulara was an "application" under the SCRA, the Complaint still fails to state a violation of § 518.

he did not make his mortgage payments while he was in Afghanistan.  Murphy's missed payments are a valid and alternative reason for BOA to file an adverse credit report and for BOA to determine that Murphy could not pay his mortgage.

Nothing in § 518, or any other section of the SCRA, excused Murphy from making his mortgage payments while on active duty.  And, nothing in § 518 prohibits BOA from making adverse credit report or foreclosing on Murphy's home because of his missed payments.  If BOA represented to Murphy that he did not have to pay his mortgage while away in Afghanistan, then Murphy may have a claim for that misrepresentation.  But, that misrepresentation is not actionable under § 518.

The Complaint does not adequately allege that BOA acted because of Murphy's application for or receipt of a stay under the SCRA.  Thus, the Complaint fails to allege a plausible violation of § 518.  Counts Three and Five are due to be **DISMISSED** for failure to state a claim for which the court can grant relief.

### B.    Section 527

As with § 518, the court concludes that the language of § 527 is plain and unambiguous.  Section 527 imposes a six percent (6%) cap on interest rates for service members while in protected status.  The statute provides:

(a)    Interest rate limitation

(1)    Limitation to 6 percent

An obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent--

(A)     during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage; or

(B)      during the period of military service, in the case of any other obligation or liability.

(2)     Forgiveness of interest in excess of 6 percent

Interest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven.

(3)     Prevention of acceleration of principal

The amount of any periodic payment due from a servicemember under the terms of the instrument that created an obligation or liability covered by this section shall be reduced by the amount of the interest forgiven under paragraph (2) that is allocable to the period for which such payment is made.

(b)     Implementation of limitation

(1)     Written notice to creditor

In order for an obligation or liability of a servicemember to be subject to the interest rate limitation in subsection (a), the servicemember shall provide to the creditor written notice and a copy of the military orders calling the servicemember to military service and any orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service.

(2)     Limitation effective as of date of order to active duty

Upon receipt of written notice and a copy of orders calling a servicemember to military service, the creditor shall treat the debt in accordance with subsection (a), effective as of the date on which the servicemember is called to military service.

11

    (c)     Creditor protection

          A court may grant a creditor relief from the limitations of this section if, in the opinion of the court, the ability of the servicemember to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service.

    (d)     Definitions
          In this section:
          (1)     Interest
                The term "interest" includes service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability.
          (2)     Obligation or liability
                The term "obligation or liability" includes an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage.

50 App. U.S.C. § 527. Section 527 does not excuse a service member from making mortgage payments. Only the amount of interest on the mortgage which would exceed six percent (6%) is excused. *See* § 527(a)(2) & (3).

In this case, Counts One and Two assert that BOA violated § 527 by failing to apply the statutorily mandated interest rate of six percent (6%) to Murphy's loan. (Doc. 1 at 11–12.) However, it is undisputed that Murphy's interest rate on his mortgage was fixed at four point eight seven five percent (4.875%). (Doc. 11-1 at

2.)[4]  This rate is below the statutory maximum cap of six percent (6%).  Therefore, BOA has not violated § 527.  Counts One and Two are due to be **DISMISSED** for failure to state a claim.

### C. Fair Credit Reporting Act

Finally, Count Four asserts a claim against BOA for violating the FCRA by "report[ing] adversely on [Murphy's] credit when it was prohibited from doing so by the SCRA.  Such adverse reports were based on [Murphy's] failure to make payments which were not due to be made because of the SCRA but which BOA nevertheless treated as being delinquent."  (Doc. 1 at 14.)  Therefore, it is clear from the allegations in Count Four that this claim stands or falls with Murphy's claims under the SCRA.  Because the court has already determined that BOA did not violate the SCRA, BOA has not violated the FCRA.  Count Four is due to be **DISMISSED** for failure to state a claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 11) is

---

[4]  Murphy's mortgage note was not attached to the Complaint.  Instead, BOA attached the note to its Motion to Dismiss.  Ordinarily, a court may not consider evidence outside the pleadings in resolving a Motion to Dismiss without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  However, the note is central to Murphy's claims, especially Counts One and Two, and its authenticity is not disputed.  Therefore, under the "incorporation by reference" doctrine, the court may consider the note without converting BOA's motion to one for summary judgment.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

**GRANTED**.  This case is hereby **DISMISSED WITHOUT PREJUDICE** for failure

to state a claim.  A separate final judgment will be entered.[5]

       **DONE** and **ORDERED** this the 28th day of November, 2012.


                                              _____

                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge

---

[5]  Plaintiff's request to certify a class action is **MOOT**.